UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                      CASE NO. 17-CR-20701-5-MGC

UNITED STATES OF AMERICA,
                                        Miami, Florida
                                        June 27, 2018
          vs.

ALFREDO KINDELAN HERNANDEZ,

                  Defendant(s).      Pages 1- 18

------------------------------------------------------------

                        SENTENCING HEARING
             BEFORE THE HONORABLE MARCIA G. COOKE
                  UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:      IGNACIO J. VAZQUEZ, JR., AUSA
                         United States Attorney's Office
                         Miami Special Prosecutions Section
                         99 Northeast 4th Street, Room 806
                         Miami, Florida 33132
                         ignacio.vazquez@usdoj.gov


FOR THE DEFENDANT(S):    ALFREDO A. IZAGUIRRE
                         Alfredo A. Izaguirre, P.A.
                         338 Minorca Avenue
                         Coral Gables, Florida 33134
                         alfredo@izaguirrelaw.com


REPORTED BY:             Jill M. Felicetti, RPR, CRR, CSR
                         Official Court Reporter
                         400 N. Miami Avenue, Suite 08S27
                         Miami, Florida 33128
                         jill_felicetti@flsd.uscourts.gov

(Case called to order of the court at 10:44 a.m.)

THE COURT:  For the record, appearing on behalf of the United States.

MR. VAZQUEZ:  Good morning, your Honor.  Ignacio Vazquez on behalf of the United States.

THE COURT:  Appearing on behalf of Mr. Kindelan Hernandez.

MR. IZAGUIRRE:  Good morning, your Honor.  Alfredo Izaguirre on behalf of defendant, who is present in court with the aid of the Spanish interpreter.

THE COURT:  Probation and spectators may be seated.

Today is the date and time, counsel, set for your client to be sentenced in this matter.  For the record, his total offense level is 27, Criminal History Category is II, his advisory guideline range is 78 to 97 months.  However, there is an 84 month consecutive term in Count 4.

You may proceed.

MR. IZAGUIRRE:  Your Honor, I filed two objections.  I think they were minor factual objections.  I don't think the government has an issue with them.

MR. VAZQUEZ:  We do not.

THE COURT:  For the record, can we state where we need to make the changes in the probation report?

MR. IZAGUIRRE:  Paragraph 12, that he was not wearing a mask on that date, and Paragraph 14, that he was in the car

the day of the robbery but he never approached the victim; he stayed in the car.

THE COURT: Government, you agree with the factual change to Paragraph 12 on page 6?

MR. VAZQUEZ: Yes, your Honor.

THE COURT: I'd ask probation to make that correction, please.

And the next one, Mr. Izaguirre.

MR. IZAGUIRRE: 14, that he was in the car and he did not approach the victim, that he stayed in the car during the robbery.

THE COURT: Counsel for the United States, do you agree?

MR. VAZQUEZ: We have no objection.

THE COURT: I'd ask probation to make that change in Paragraph 14.

Any other factual issues, counsel?

MR. IZAGUIRRE: No, your Honor.

THE COURT: 3553 factors for the court?

MR. IZAGUIRRE: Your Honor, I filed a sentencing memorandum. Just to briefly --

THE COURT: I do have a copy.

MR. IZAGUIRRE: -- supplement it. We did agree to a plea agreement of, I believe it was, 300 months, which is 25 years. Obviously that's what I agreed to; however, your Honor

has discretion to do as she pleases. And also taking into consideration the sentence of codefendants in this case, who I believe have been sentenced to a significant amount more than what they agreed to.

THE COURT: When you say 300 months, I am trying to figure out how that would work given the guidelines. Are you saying a sentence above the guideline range?

MR. VAZQUEZ: That's the joint recommendation from the parties.

THE COURT: That's why I am asking. I had that on Count 1 -- Counts 1 and 2 the advisory guideline range is 78 to 97 months.

MR. VAZQUEZ: Correct.

THE COURT: And Count 4, it's 84 months consecutive?

MR. VAZQUEZ: Correct.

THE COURT: So where is the 300 coming? That's above the advisory guideline range.

MR. VAZQUEZ: That's the parties' plea agreement and recommendation to the court in light of the fact that when we were negotiating with counsel, there was a second 924(c) which added a consecutive 25-year term, and in our negotiation we agreed to drop that second 924(c).

The reason why these sentences are being recommended to the court is in the probation report and reflected in our factual proffer, what the defendants who have pled have told

the court is that they were, in essence, part of a criminal organization that's committing robberies, kidnappings, traveling internationally. They have come forward to you and told you this is the conspiracy.

It is very serious. People were harmed. They are -- new robberies are relatively frequently being identified, and for us, when we come forward to the court and say, your Honor, there is a provision in here that says that it may be possible that if we have leaders and organizers that may be indicted later on who are employing them, that they may be back before your Honor, and they may ask you for a sentence reduction in the future.

For us, I think it was important for us to have this sentence that reflected the gravity of what they are telling us, the gravity of what is in the factual proffers, and it's very serious.

THE COURT: I understand that, and I know at the time when counsel negotiates the pleas you don't always know how the guidelines are going to shake out. But what I am trying to determine is you are not advocating, Mr. Vazquez, for a sentence above the advisory guideline range; it's that when the defendant negotiated, he was sort of capping his liability, for lack of a better word, at 300 months knowing everything that was out there in terms of his criminal behavior.

MR. VAZQUEZ: Well, our view is that if we knew that,

we would be asking you for a total sentence of 300 months, wherever it shook out, because we knew that it's -- essentially, we have given him, in our view, a wind fall if he is just measured by the guidelines because he had a consecutive 25-year term, and that was the crux of our negotiation where we said we don't -- we want to avoid that consecutive 25-year term.

This conduct is very serious, and so that's why wherever the guidelines shook out -- you know, we saw his criminal history.  It was possible that he was going to have a Category II.  So we are asking for the sentence that we put in the plea agreement.

THE COURT:  So you are asking the court for a sentence above the advisory guideline range?

MR. VAZQUEZ:  Right, and that's what we have in our agreement, that we would jointly recommend that to you.

THE COURT:  Counsel for defendant.

MR. IZAGUIRRE:  Your Honor, this case stemmed from debriefings.  He is already sentenced on another case in front of Judge Martinez.  He was sentenced to 15 years for it. During that case he cooperated, was truthful, has always been truthful, and then that's how this case arose.  I guess he had no immunity for crimes of violence.

MR. VAZQUEZ:  That's correct.

MR. IZAGUIRRE:  And then the government indicted him

based on his statements, and here we are now.  And this conduct -- and the government could correct me if I am wrong -- was conduct that occurred before the Martinez case.

MR. VAZQUEZ:  That's correct.

MR. IZAGUIRRE:  So these are quite dated acts.

The co-defendant was sentenced, I think, last month, Mr. Marrero Lara, and I believe he received 18 years for this case.  Mr. Hernandez has always been truthful to the government, has been debriefed in both cases, been truthful to the point of being indicted truthful.

THE COURT:  But Mr. Lara's criminal culpability I think --

THE DEFENSE:  Is more.

THE COURT:  -- is more?

MR. IZAGUIRRE:  Yes.

THE COURT:  So I don't think that this defendant should face the same sentence as Mr. Lara, correct?  Am I wrong?

MR. VAZQUEZ:  Your Honor, I am in a difficult -- I agree with that premise.  They were structured -- and the court of course has the province to do what you think is just, and we respect the court.  We had a joint recommendation for Mr. Lara of 360 months.

And if I just -- a caveat to what Mr. Izaguirre told you.  He was arrested on the kidnapping which was part of this

same organization in the Martinez case.  So for one kidnapping with the same -- many of the same people he got 180 months. This is a continuation of that same organization acting and traveling, which is why the proffer reads how it does.  I offer that just so that we can explain the recommendation.

MR. IZAGUIRRE:  Your Honor, besides the conduct --

THE COURT:  I don't disagree, but I -- maybe this is my own reticence based upon trying to measure criminal culpability of the defendant is I have already sentenced Mr. Lara to 151 months.

MR. VAZQUEZ:  You sentenced Mr. Lara to a total of --

MR. IZAGUIRRE:  219.

MR. VAZQUEZ:  219 months.

THE COURT:  219.  All right.  I am trying to -- I don't always succeed in these multiple defendant cases, but I do try to sentence the defendants given their relative culpability.

So if Mr. Lara is the most culpable, his sentence, whether it's above or below the advisory guideline range, should reflect that in my mind.

MR. VAZQUEZ:  I agree with you.  Your Honor, may I just chime in on a point?

THE COURT:  Please.

MR. VAZQUEZ:  When we had the sentencing for Mr. Lara, I think that one of the things that the court was asking me and

asking defense counsel your concern about the impact of the 924(c), and I think, from my memory, that that might have been why the court tailored the sentence the way that it did, concerned that the 924(c) would run consecutive to the Martinez case.

So in that case, mindful of what the court's concern was, to achieve the sentence that we ask for in the plea agreement, the court could sentence him -- that would be above the guideline but it would be consistent with our plea agreement -- to 216 months to Counts 1 and 2 followed by the 84 months. That would get us to the recommendation.

I hear what the court is saying, I have already sentenced someone who is more culpable than him to 219 months.

THE COURT: And I believe I ran the sentences in Mr. Lara's case concurrent with the Martinez case.

MR. VAZQUEZ: Right, but --

THE COURT: Even his 84 months consecutive --

MR. VAZQUEZ: Right.

THE COURT: -- was concurrent with whatever he is serving with the Martinez case.

MR. VAZQUEZ: Correct. I am just recalling some of the questions. But it is true, Mr. Kindelan -- these are folks, based on what they have told us -- I will say, your Honor, I am trying to be as cautious as I can -- this is an ongoing case -- but they have told us, all of them, is this is

all very grave stuff that they were doing, and they have been candid, and I think that they are, hopefully, trying to right their path. But it's very serious admissions that they have given us.

THE COURT: Mr. Vazquez, we have already sentenced Mr. Lara. He received 219. We haven't sentenced Mr. Valdez Valhuerdis yet, correct?

MR. VAZQUEZ: He is a career offender at least as of now, so he is --

THE COURT: We know his sentence is going to be higher than Lara even if he has less criminal culpability in this enterprise?

MR. VAZQUEZ: Likely.

THE COURT: Contino Valhuerdis still hasn't been sentenced.

MR. VAZQUEZ: He is a fugitive.

THE COURT: And it appears as if Mr. Garcia Morales is going to avail himself of the court and have a trial.

MR. VAZQUEZ: Yes. And I say -- I want to just give the thoughts of the government here, and with all the respect for the court, we have a lot of victims who will pop up because they will hear about these folks and they will say I was robbed by them too, and we will get corroboration from some of them and say I robbed them.

So when we are articulating our sentences this is part

of our thought process, to talk to new victims that pop up and say, look, we have a comprehensive sentence, you may not need to have a new charge brought against him if it wasn't a homicide or something like that.

So it's in our calculus as far as how to grapple with folks that have been just prolific kidnappers and robbers. Mr. Lara, based on some of the things that he has -- he may have had some crimes that we may not be able to fully rectify them with the sentence that he has.

THE COURT:  Mr. Lara is a very interesting person.

MR. VAZQUEZ:  Yes.

THE COURT:  Counsel for the defendant.

MR. IZAGUIRRE:  Your Honor, I'd like to note Mr. Hernandez has less criminal history than Mr. Lara.  His agreement with the government was less.

THE COURT:  Mr. Vazquez acknowledges that and says we sort of knew that going in which is why we made the -- we advocated for the sentence that we did in the plea agreement, that we felt his criminal behavior was such that looking at only his criminal history didn't reflect the seriousness of what he had done.

MR. IZAGUIRRE:  In this case, he is also indicted on drug sales which Mr. Hernandez is not.  Again, I have to -- we signed a plea agreement for 300, but your Honor has discretion to do as your Honor pleases taking into consideration the

sentences of codefendants.

Present before the court is -- they are not going to say anything, but just so you know their presence is Mr. Kindelan's father, stepmother, and wife, and I believe Mr. Kindelan would like to address the court at this time.

THE COURT:  Counsel, does your client wish to address the court?  I know there is a letter in the file, but...

MR. IZAGUIRRE:  Yes, he wishes to address the court, your Honor.

THE DEFENDANT:  (Through Spanish interpreter)  Thank you very much, your Honor, for giving me an opportunity to address you and everybody here that's present.  I feel very remorseful for all of the crimes that I have committed.  I would apologize to all the victims, but especially I apologize to my family, my daughter.  I haven't had the pleasure of -- the privilege or the pleasure to taking her to school, to spend birthdays with her.  That's what I am suffering day after day, and I would like for you to give me the opportunity to be with her again soon, to take her, even if it's just to high school, thank you.

THE COURT:  One more question, Mr. Vazquez.

MR. VAZQUEZ:  Yes, your Honor.

THE COURT:  Mr. Valhuerdis that is not a fugitive, where is he in terms of criminal culpability?

MR. VAZQUEZ:  He is, I would say, contemporary with

Mr. Lara.  He fled after the gold heist.  He coordinated with another one of your defendants set for sentencing, Mr. Pieto, who is an associate who assisted this enterprise run.

I would say they are all relatively close.  I have to acknowledge that Mr. Lara is above this defendant, but they are relatively close.

THE COURT:  What about -- I am saying this even though he has not availed himself of a plea -- at least in terms of your review of the evidence if you had to discuss the culpability of Mr. Garcia Morales?

MR. VAZQUEZ:  I always find Mr. Lara and Mr. Raonel Valhuerdis as the more engaged and leadership role. Mr. Leonardo Garcia Morales was a person that for the Miramar attempted robbery, what I anticipate the trial evidence, or at least for this sentencing I would proffer, that he was the source.  He was the tip man who said we are going to hit that house, we are going to attempt this home invasion.  They hit the wrong house.  They hit a totally innocent family thinking that it was a marijuana grow house, terrified those people, and he was shot during that.

So he exerted some degree of initiative and leadership as far as spotting victims, and then once he was paralyzed these defendants gave him a payoff, like a severance package, instead of trying to do something good with it.  Our evidence at trial, what we will allege, is that he invested in cocaine

and was on an undercover drug deal while paralyzed.

So he is, perhaps, not the head of the Hydra, so to speak, but he is -- I would say he is an involved criminal. They are all very serious criminals.

MR. IZAGUIRRE:  Just to note, during the gold heist, as the PSI states, this defendant was -- I don't want to say he is innocent, but he was the one in the car.  He never approached a victim with the gun.

MR. VAZQUEZ:  Judge, you know, just so that it's clear, you know, when we are negotiating with the defense -- just to give the thought process to the court, and the court will do as it thinks is just -- they are coming to us saying we want this to be over, we want this to be everything, we don't want to get charged again.  So we sit back and we say, how do we achieve a sentence for a group of people who do so many robberies, by their own admission, that we can't even find some of them, where random victims are popping up in and out?  And that's how we came to what we came to.

I would say Mr. Lara, for whatever it is worth, there is some things about Mr. Lara that have not been reconciled.  I have had an opportunity to speak without any barrier with this defendant.  So there are things that have not been resolved with Mr. Lara that may expose him to additional charges if we are not able to work that out.

THE COURT:  After the arguments of counsel and a

review of the presentence report and a recognition of the 3553 factors, I will be sentencing this defendant outside the advisory guideline range.

It is the judgment of the court that the defendant is hereby sentenced as follows: As to Count 1 and 2, the defendant is hereby sentenced to 116 months to run concurrent with each other and concurrent in the Martinez case, which is 15-20169. In Count 4 the defendant is sentenced to 84 months to run consecutive to the 116 month sentence in Counts 1 and 2 for a total of 200 months in this case. I think I have already said it runs concurrent with 15-20169-Martinez.

He is placed on supervised release for a period of three years. I don't think restitution yet has been set. Is that correct, Mr. Vazquez?

MR. VAZQUEZ: That's correct.

THE COURT: Do you anticipate restitution in this matter?

MR. VAZQUEZ: I believe that an order will be agreed to. I believe it's going to be a financial amount that, perhaps, no one could make. It is going to be in the millions of dollars.

THE COURT: What I am going to do is set it for 90 days. Ivan, if you give us a date. Counsel, if you get an agreed upon order, please notify the court. There will be no need for a hearing.

Once restitution is set, the defendant shall pay 50 percent of any UNICOR wages.  If he is not in UNICOR, then $25 per quarter.  Once released he shall pay restitution consistent as set by the probation department.  I believe I stated he is on supervised release for a term of three years as to Counts 1, 2, and 4.  The term is to run concurrent.  He is to abide by the standard conditions of supervised release and the special conditions as outlined in Part G and pay the special assessment of $300.  That's $100 as to each of the counts of conviction.

Is there a forfeiture in this matter, Mr. Vazquez?

MR. VAZQUEZ:  Your Honor, there are no items that we have in custody to forfeit on this matter.

THE COURT:  Now that sentence has been imposed, does the defendant or his counsel object to the court's findings of fact or the manner in which the sentence was pronounced?

MR. IZAGUIRRE:  No, your Honor.

THE COURT:  Sir, you have a right to appeal the sentence imposed.  Any notice must be filed within 14 days.  If you are unable to pay the cost of appeal, you may apply for leave to appeal in forma pauperis.

For the record, Mr. Vazquez, if Mr. Garcia Morales is convicted, do you anticipate that he would be a career offender?

MR. VAZQUEZ:  I don't think -- I am not sure if he

will be a career offender.  He is a state career offender.  I don't -- I'd have to check if that's going to qualify here with the changes in the case law.

THE COURT:  Thank you very much, counsel.

MR. IZAGUIRRE:  Your Honor, one more thing.  I am CJA appointed, and I think he is going to be continued to be debriefed.  I don't know if I am still on the case, or do I need a separate voucher, or am I not on the case?

THE COURT:  I don't know either, but if he continues to need your assistance post judgment, submit the appropriate voucher.  Just make that notation on the voucher since they are submitted electronically, and let the reviewers know why you are still submitting a voucher post conviction.

MR. IZAGUIRRE:  Okay.  Thank you, your Honor.

THE COURT:  Excuse me.  From probation.

PROBATION OFFICER:  Did you note any special conditions to supervised release?

THE COURT:  The conditions that are outlined in the report in Part G.

PROBATION OFFICER:  Thank you, your Honor.

THE COURT:  Thank you everyone.

I am sorry, Mr. Izaguirre.  Were there any requests from the court in terms of special --

MR. IZAGUIRRE:  If he could be housed as close to South Florida as possible.

THE COURT:  I will make that recommendation, but you know there are two things that are going to influence it.  One, South Florida is South Florida, and two, there are co-defendants in this case, and they all ask for South Florida, and I don't know if the Bureau of Prisons will be able to accommodate that or may not think it's wise to.

Thank you.

(Proceedings concluded at 11:08 a.m.)


C E R T I F I C A T E


I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.


November 14, 2018          /s/ Jill M. Felicetti
                           Jill M. Felicetti, RPR, CRR, CSR
                           Official Court Reporter
                           400 N. Miami Avenue, Suite 08S27
                           Miami, Florida 33128
                           jill_felicetti@flsd.uscourts.gov